## Marks *v.* Lumbermen's Ins. Co. of Phila., Appellant.

Argued October 7, 1946. Before BALDRIGE, P. J., RENO, DITHRICH, ROSS and ARNOLD, JJ. (RHODES and HIRT, JJ., absent).

*C. L. Cushmore, Jr.,* with him *White & Williams,* for appellant.

*Stanley Folz,* with him *Morton P. Rome* and *Sundheim, Folz, Kamsler & Goodis,* for appellee.

OPINION BY ROSS, J., December 11, 1946:

This is a suit in assumpsit on an insurance policy issued by the defendant on a two-story frame dwelling owned by the plaintiff and situated at Beach Haven Park, Long Beach Island, New Jersey. The jury returned a verdict in favor of the plaintiff and after defendant's motions for new trial and judgment n. o. v. were refused by the court below, this appeal was taken.

The policy insured the plaintiff ". . . against all Direct Loss and Damage by Windstorm, Cyclone and Tornado . . ." but provided that the insurer shall not be liable "for loss or damage caused directly or indirectly by tidal wave, high water or overflow whether driven by wind or not . . .".

The plaintiff in his statement of claim alleged that on September 14, 1944, a windstorm and tornado caused direct loss and damage to the insured property. The affidavit of defense denied plaintiff's allegation and averred that any loss or damage to the property was caused by tidal wave and high water. This raised an issue of fact for the jury to determine and upon its determination would rest its verdict. It was undisputed that plaintiff's property was damaged to an amount in excess of the face of the policy and there is involved no interpretation or construction of the policy.

The burden was on the plaintiff to show that the risk insured against (wind) was the proximate cause of his loss in order for him to recover although a peril excluded from the policy (water) may have remotely or incidentally contributed thereto. While the peril insured against must be the approximate cause of the loss, it need not be the sole cause. *Tannenbaum v. Fire Insurance Cos.*, 127 Pa. Superior Ct. 278, 193 A. 305; *Trexler Lumber Co. v. Allemannia Fire Insurance Co.*, 289 Pa. 13, 136 A. 856. It is not enough to show that the plaintiff's loss may have been due to one or more causes for only one of which the insurer would be liable; he must individuate as the cause the one for which the insurer would be liable and the law requires only that the evidence as to the operative cause of the damage be enough to satisfy reasonable and well-balanced minds that it was the one on which the plaintiff insurer relies. *Liguori, Admr., v. Philadelphia*, 351 Pa. 494, 41 A. 2d 563.

The jury by its verdict resolved the question of fact in favor of the plaintiff and on the motion for judgment n. o. v., he is entitled to have the evidence supporting his verdict considered and all the rest rejected, (*Kulka v. Nemirovsky*, 314 Pa. 134, 170 A. 261; *Sorrentino v. Graziano*, 341 Pa. 113, 17 A. 2d 373) and he must be given the benefit of every fact and inference of fact

pertinent to the issue which may reasonably be deduced from the evidence. *Christ v. Hill Metal & Roofing Co.*, 314 Pa. 375, 171 A. 607.

The insured property is located on the Atlantic Coast of New Jersey about 150 feet from high tide mark. The official United States meteorological records show that a hurricane wind hit all portions of the New Jersey coast on September 14, 1944. The maximum wind velocity was 91 miles an hour and the peak wind velocity sustained for a five-minute period was 82 miles an hour, occurring at 4:30 P.M. There were no eye witnesses to the damage done to plaintiff's property but witnesses who saw the plaintiff's house the morning of September 15, testified that it had been moved off its foundation about four and a half feet with much accompanying damage; the heater and the columns were pushed through the living room floor, the second floor and the attic floor "pushed up", "each gable end was pushed out of position, and the bottom was pushed out of position; it (the house) was a wreck"; the house "instead of being square, seemed to be in a diamond shape, in a sort of twist".

Bay Avenue is a street running practically the entire length of Long Beach Island from Barnegat at the north to Beach Haven at the south, a distance of eighteen miles and farther inland than Jerome Avenue, where the plaintiff's house is located.

The plaintiff testified that on the day after the hurricane he traveled down Bay Avenue and saw many houses damaged and off their foundations, that he saw garages separated from the house, roofs lying down by the side of the houses and houses blocked against one another and that this condition was true of houses in the middle of Long Beach Island as well as those on the beach front. His witness, Oliphant, a builder who repaired plaintiff's house and thirty more cottages wrecked during the hurricane, eleven of which were in

the center of the island, testified that on Long Beach Island the morning after the hurricane the wreckage was "terrible"; houses were off their foundations and all along the way were strewn "in groupings and parts" with roofs torn off and sheds down. Parts of houses were out on the highway; "the houses were in all shapes that you could imagine", and the houses along Bay Avenue, the center of the island, were damaged in the same manner as the damage done to the plaintiff's house. Defendant's evidence tended to show that damage to plaintiff's house was caused by high water during the hurricane, but that was for the triers of fact. *Trexler Lumber Co. v. Allemannia Fire Insurance Co.*, 289 Pa. 13, 136 A. 856, supra. As stated by the learned court below, ". . . the testimony offered for the plaintiff was fully sufficient for the jury to draw the conclusion that the direct and proximate cause of the damage was the hurricane wind . . .". Judgment n. o. v. should only be entered in a clear case (*Kissinger et al. v. Pittsburgh Railways Co.*, 119 Pa. Superior Ct. 110, 180 A. 137), and the court below did not err in refusing defendant's motion for judgment n. o. v.

In support of its motion for a new trial, appellant assigns as error the lower court's admission of testimony relative to damage to other buildings. This was clearly admissible to establish the fact that Long Beach Island was swept by a hurricane on September 14, 1944. *Trexler Lumber Co. v. Allemannia Fire Insurance Co.*, supra. Appellant also assigns as error the lower court's refusal to allow a witness called by it to testify relative to the effect of high winds on buildings in Miami, Florida, during a hurricane there in 1926. The rejection of this testimony was within the discretion of the trial judge (*Thompson v., American Steel and Wire Co.*, 317 Pa. 7, 175 A. 541) and a reading of the record discloses no abuse of that discretion.

Appellant further assigns as error the lower court's sustaining of plaintiff's objection to the following hypo-

thetical question addressed by it to an expert witness: "In your opinion, would it be possible for a wind, with a maximum speed of 91 miles an hour, and reaching as high as 82 miles an hour for a continued period of at least five minutes, to blow from its foundation a house of the type that Mr. Marks has described?" This witness had testified as to the dimensions of the house, its approximate weight and the wind pressure per square foot of wind at 91 miles an hour. It was, also, in evidence that the hurricane hit Beach Haven in a circular motion. It is a matter of common knowledge that the damage done by hurricanes is unpredictable. Consequently, an opinion whether a hurricane would or would not do anything certain would be pure guesswork. There are variants, as the witness admitted, and his *opinion* would have been valueless to the jury. A witness will not be permitted to express a guess or to state a judgment based on mere conjecture (*Sweeney v. Blue Anchor Beverage Co.*, 325 Pa. 216, 189 A. 331) and the court below did not err in sustaining plaintiff's objection to the hypothetical question.

The appellant's assignments of error in support of its motion for a new trial are dismissed.

Judgment affirmed.