■ FREDYLYN B. F. RUBIN et al., Respondents, v. AERO MAYFLOWER TRANSIT COMPANY, Appellant.— Judgment entered on April 15, 1963, unanimously modified so as to reduce the award to the infant plaintiff to the sum of $22,500, and, as so modified, affirmed, with costs to defendant-appellant, as against the infant plaintiff and with costs to plaintiff Herbert M. Fern against the defendant-appellant. The award of damages in the sum of $30,000 to the infant plaintiff is excessive and not justified on the record. Settle order on notice. Concur — Botein, P. J., Breitel, McNally, Stevens and Eager, JJ.

■ PRUDENTIAL CAPITAL CORP., Respondent-Appellant, v. ROYAL INDEMNITY COMPANY, Appellant-Respondent.— Order, entered on January 6, 1964, granting summary judgment, unanimously reversed, on the law, and the motion denied, with costs to abide the event. Plaintiff, a factor, sues an insurance company. It appears that plaintiff participated in the factoring of Bo-Craft Enterprises, Inc., by Whitehall Mercantile Corp., another factor. Bo-Craft Enterprises obtained advances from Whitehall on the strength of spurious invoices and documents of delivery, and losses were sustained as a result. Defendant resists payment on a broker's blanket bond attached to an indemnity policy which it had issued to plaintiff, on several grounds. The policy provided against loss due to extending credit on any instruments "which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer . . . or as to the signature of any person signing in any other capacity ". Defendant contends that this language does not provide indemnity in regard to an instrument unless it contains a forged signature and that the coverage does not include such instruments as are entirely false, such as invoices purporting to be for sales when in fact no sale was ever made, or delivery documents when no goods were ever shipped. This conclusion is reached by interpreting the phrase to apply to instruments which are counterfeit by virtue of the fact that they are forged. This contention has received not inconsiderable support (*First Nat. Bank of South Carolina* v. *Glens Falls Ins. Co.*, 304 F. 2d 866). The language has been interpreted, however, to include documents which are counterfeit in respects other than the forgery of signatures (*Fidelity Trust Co.* v. *American Sur. Co. of N. Y.*, 174 F. Supp. 630, affd. 268 F. 2d 805). Whatever may be the true lexicographical interpretation, the test remains what the reasonable expectation of the ordinary businessman would be (*Harris* v. *Allstate Ins. Co.*, 309 N. Y. 72, 75; *Bird* v. *St. Paul Fire & Mar. Ins. Co.*, 224 N. Y. 47, 51). Applying this test we would agree with Special Term that losses incurred through reliance on entirely spurious documents are covered, even though no forged signature is involved. However, the case presents other questions that are factual issues, which cannot be resolved on this record. Just what losses resulted from credit extension on the faith of counterfeit documents — including the question of whether the documents relied on were actually counterfeit — is not satisfactorily established. While in a sense this is a question of damage, it goes to the heart of the question of whether there is to be any recovery at all and, as such, should await trial. Furthermore, the record discloses the existence of other arguable issues. While these may possibly resolve into questions of law upon a full exploration of the facts, such an exploration is required for their proper resolution. Concur — Breitel, J. P., Rabin, McNally, Eager and Steuer, JJ.